AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellee,

v.

Theda V. GIESOW, Defendant-Appellant.

No. 520, Docket 32649.

United States Court of Appeals Second Circuit.

Argued April 17, 1969.

Decided June 17, 1969.

---

Walter C. Reid (Hartnett & Reid), New York City, for plaintiff-appellee.

Before WATERMAN, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from various orders entered in the United States District Court for the Eastern District of New York in an action brought by a surety for breach of a subordination agreement. The court entered partial summary judgment for the surety, and the defendant appeals. For the reasons set forth below, we dismiss the appeal.

### I

In 1961, the plaintiff, Aetna Casualty & Surety Company ("Aetna"), issued performance and payment bonds on a construction project undertaken by one William J. Magee. In order to assure that the project would be a bondable risk, Magee obtained a loan in the amount of $25,000 from the defendant, Mrs. Theda Giesow. As a condition precedent to the issuance of any bonds, the plaintiff insisted that the defendant sign an agreement subordinating her rights against Magee to any losses the plaintiff might sustain in its capacity as surety. The agreement also provided that the defendant would not accept repayment of the Magee loan without written notice from the plaintiff approving repayment. Such notice would be sent when the plaintiff determined that it sustained no losses on the bonds involved here. In the event the defendant failed to comply with the provisions of the subordination agreement, it was agreed that the defendant would indemnify the plaintiff for "any and all liability, loss, costs, damages, attorneys' fees and expenses of whatsoever kind or nature which the Surety may sustain or incur by reason of or in consequence of having executed said bond or bonds."

On June 20, 1962, the defendant accepted repayment of the Magee loan without written notice from the plaintiff. Magee later defaulted on the construction contract, and the plaintiff became liable on a "labor and materials payment bond."

Samuel Gottlieb (Bernard Beitel, Gainsburg, Gottlieb, Levitan & Cole), New York City, for defendant-appellant.

The plaintiff paid out approximately $27,000 to subcontractors on this payment bond, and thereupon sued the defendant to recover this amount, plus interest and reasonable attorneys' fees.

In opposing the plaintiff's motion for summary judgment, the defendant said that she had never intended to subordinate her rights against Magee to any bond other than a performance bond, and strongly urged that the language of the subordination agreement was at least susceptible of such an interpretation. She also argued that the plaintiff had consented to repayment by waiving written notice. These arguments were rejected by Judge Bruchhausen, and partial summary judgment was entered for the plaintiff on the issue of liability.

Pre-trial conferences were then held before Chief Judge Zavatt, who entered a pre-trial order stating that there were still questions of fact as to damages on the payment bond, as well as the amount of counsel fees to be allowed plaintiff. The parties stipulated to the amount paid by the plaintiff to subcontractors on the payment bond, and they then proceeded to trial before Judge Abruzzo. During the course of trial Judge Abruzzo said, "I am not used to being pushed around by lawyers," and he declared a mistrial. Then, strangely enough, Judge Abruzzo entered judgment for the plaintiff in the amount of $34,961.84, representing labor and material costs plus interest, despite strenuous protestations by the defendant that damages could not exceed the amount of the subordinated debt. She also argued quite insistently that the plaintiff did not pay the subcontractors until after the contractual period of limitations had run, and thus that she could not be liable for such payments. Judge Abruzzo did not apparently consider any of these contentions in fixing the amount of damages. He then ordered that the claim for reasonable counsel fees "is hereby severed," and entered final judgment on the damages question. Although there is no mention of Rule 54(b), Fed.R.Civ.P., Judge Abruzzo did expressly determine that "there was no just reason for delay."

## II

By its very words Rule 54(b) is applicable only "[w]hen more than one claim for relief is presented," and thus the partial adjudication of a single claim is not appealable, regardless of whether there is a Rule 54(b) certificate. McNellis v. Merchants National Bank & Trust Company of Syracuse, 385 F.2d 916 (2d Cir. 1967). Since the plaintiff would not be entitled to counsel fees if there was no breach of the subordination agreement, we believe that the issues of damages and counsel fees are so inexorably interconnected as to make this a single claim. Cf. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 243 F.2d 795 (2d Cir. 1957). In Rieser v. Baltimore & Ohio Railroad Co., 224 F.2d 198, 199 (2d Cir. 1955), cert. denied 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956), we said that the test of multiple claims was "whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." Under this test it seems quite clear that the claim for counsel fees cannot be enforced apart from the claim for breach of the subordination agreement, and to this extent we have only a single claim here. Cf. Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959). There is also some question as to whether the judgment here can properly be said to be "final," since reasonable counsel fees are a contractually specified element of damages and plainly the amount of those fees has not yet been determined. See United States v. Burnett, 262 F.2d 55 (9th Cir. 1958). Since we lack jurisdiction, we must dismiss this appeal.

## III

Since this case will have to go back to the district court for computation of reasonable counsel fees, we think we should point out that Judge Bruchhausen and Chief Judge Zavatt both thought that there were "substantial" issues of fact concerning damages, and despite Judge Abruzzo's somewhat choleric determination that all the underbrush should be

cleared away with one swing of the scythe, we think that issues of fact remain on the damage question. There is at least a very real question as to whether the plaintiff made payments to subcontractors after the expiration of the contractual period of limitations.[1] There also appears to be some question as to whether Magee was financially able to pay his subcontractors and material men when he ceased work, since the plaintiff apparently bonded Magee on subsequent construction projects and presumably satisfied itself as to his financial solvency.

 We also think that there may be triable issues of fact on the threshold questions raised by this case. We cannot perceive any reason why the plaintiff could not "waive" written notice, and indeed, the defendant points to certain interoffice memoranda which suggest that the plaintiff apparently knew and did not object to repayment of the Magee loan.[2] Even the question of whether the subordination agreement subordinates the defendant's rights to claims arising out of the *payment* bond is not free from ambiguity. The relevant part of the subordination agreement recites that the plaintiff would "execute a bond for the performance of such contract, and such other bond or bonds the Contractor may be required to give in connection with or growing out of said contract." While there is no question that the "labor and material payment bond" is a bond "growing out of said contract," it may be that the phrase "such other bond or bonds" means *such other performance bonds*.

Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper. Lemelson v. Ideal Toy Corp., 408 F.2d 860 (2d Cir. 1969).

The court may therefore wish to reconsider its summary judgment rulings prior to or simultaneously with its determination of the issue of reasonable counsel fees under the bond. For purposes of expediting any subsequent appeal, the parties may wish to submit that appeal on the briefs already filed, together with whatever additional memoranda they may think necessary. The proceeding presently before us, however, is dismissed because there is no appealable final judgment.

Appeal dismissed.

---

1. The defendant insists that the plaintiff did not make payment to the various subcontractors and material men until fifteen *and sixteen months after Magee stopped* work on the construction project in question. By the terms of the payment bond, the plaintiff's obligations as surety were limited to "one year following the date" on which the contractor ceased work.

2. In a memorandum dated May 29, 1962, Charles W. Regan of the Aetna Bond Department wrote as follows:

   At the same time last summer Henry Giesow [sic] lent Bill Magee $25,000 personally which Bill in turn advanced to the corporation for which he received a demand note. Bill intends to repay this $25,000 out of the corporate funds some time in June of this year.

   With the profit accrued thus far this year, plus the additional sale of stock, minus the $25,000 to be repaid in June, the corporate net quick as of the end of June should amount to $45,000 to $50,-000. We will receive the accountant's financial statement as of the end of June as soon as it is available.