570 F.2d 57
 16 Fair Empl.Prac.Cas. 526, 15 Empl. Prac.
Dec. P 8040
Beraldine L. ACHA and Arlene M. Egan, each Individually and
on behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Abraham D. BEAME, Individually and in his capacity as Mayor
of the City of New York, Michael J. Codd, Individually and
in his capacity as Police Commissioner of the New York City
Police Department, and the City of New York, as a public
employer, Defendants-Appellees.
 No. 297, Docket 77-6119.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 12, 1977.
Decided Jan. 12, 1978.
 
 Murray A. Gordon, New York City, for plaintiffs-appellants.
 Leonard Koerner, New York City (W. Bernard Richland, Corp. Counsel, City of New York, L. Kevin Sheridan and Judith A. Levitt, New York City, of counsel), for defendants-appellees.
 Abner W. Sibal, Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., Joseph T. Eddins, Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Washington, D. C., on the brief for EEOC as amicus curiae.
 Before SMITH, MANSFIELD and OAKES, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Appellants, women police officers of the New York City Police Department, appeal from an opinion and order of the United States District Court for the Southern District of New York, Kevin T. Duffy, Judge, dated July 28, 1977 which denies specific members of the plaintiff class preliminary injunctive relief, and which vacates a prior judgment granting 38 members of the plaintiff class partial summary judgment. For the reasons noted below, we find that Judge Duffy acted within the proper scope of his discretion, and we consequently affirm the judgment of the district court.
 
 I.
 
 2
 Appellants commenced this class action against Abraham Beame, the Mayor of New York City, Michael T. Codd, the Police Commissioner of the New York City Police Department, and the City of New York in June, 1975. They sought to enjoin the layoff of female police officers who were slated to be separated from the police force on or about June 30 of that year. Their complaint alleged that layoffs pursuant to a "last-hired, first-fired" policy perpetuate the effects of discriminatory hiring practices by the Police Department, and consequently are forbidden by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and by the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983.
 
 
 3
 The history of the employment of women by the New York City police force was described in some detail in our first treatment of this case. Acha v. Beame, 531 F.2d 648 (2d Cir. 1976). Given the narrow focus of the issue presented here, there is no need to rehearse the fine points of that history. It suffices to note that prior to 1973 and perhaps later than this the Police Department officially distinguished by sex between two job categories: "policewomen" and "patrolman." Policewomen were hired in very small numbers, their employment based on separate examinations which established separate hiring lists. Following a partial hiring freeze which lasted from 1969 to 1973, women were still hired in relatively small numbers from eligibility lists which may have been sex-segregated. Accordingly, when the Police Department was forced to lay off over 5,000 male and female police officers due to budgetary exigencies, women were disproportionately affected: the proposed layoffs threatened to reduce the number of women on the force by 73.5%, while only 23.9% Of the men would be affected.
 
 Prior Proceedings
 
 4
 This case reaches us after a particularly complicated procedural development which lies at the heart of the matter before us on this appeal. On June 25, 1975, the named plaintiffs filed charges with the Equal Employment Opportunity Commission and the New York City Commission on Human Rights. The next day they commenced this action. Following a hearing, the district court denied the appellants' application for a preliminary injunction and dismissed the complaint as barred by the terms of §§ 703(h) and (j) of Title VII. This court reversed and remanded the case, holding that a seniority system which perpetuates the effects of past discriminatory behavior is not "bona fide," and hence not protected by the terms of the Act. Accordingly any woman who could show that absent discrimination, she would have been hired early enough to withstand the 1975 layoffs would demonstrate a remediable violation of Title VII.[1]
 
 
 5
 In May, 1976, the appellants moved for class certification and summary judgment for class members who, but for their sex, would have been appointed Police Trainees[2] on or before May 8, 1970, a date sufficiently early to withstand the layoffs. Appellees cross-moved for summary judgment, asserting that the statute of limitations and laches barred the action.[3] On July 16, 1976, Judge Duffy certified the class consisting of female police officers who were laid off on or about June 30, 1975, and granted partial summary judgment and injunctive relief for 38 members of the appellant class. He denied the appellees' cross-motion for summary judgment, basing his opinion on Evans v. United Air Lines, 534 F.2d 1247 (7th Cir. 1976).[4] Judge Duffy granted the 38 women revised seniority to a date not later than May 8, 1970, subject to modification after further hearings, and reserved judgment on the appellants' claims for back pay, reinstatement, and pension contributions.[5] Finally, he certified this judgment as final, pursuant to Rule 54(b), Fed.R.Civ.P., and appointed a special master to hear the claims of the remaining class members.
 
 
 6
 On August 30, 1976, the appellees appealed from the district court's partial summary judgment, but the appeal was dismissed for failure to docket. Subsequently, the special master held a number of hearings, and the district court affirmed these findings with respect to a number of additional members of the appellant class.
 
 
 7
 On June 15, 1977 appellees moved, pursuant to Rules 56 and 60(b), Fed.R.Civ.P., for relief from the partial summary judgment, and renewed their earlier cross-motion for summary judgment. These motions were based on intervening decisions of the United States Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Appellants opposed these motions, and moved for confirmation of additional findings by the special master.
 
 
 8
 On July 28, 1977, Judge Duffy granted the appellees' motion to vacate the partial summary judgment, denied the appellees' motion for summary judgment without prejudice, and denied the appellants' application for injunctive relief.[6]
 
 
 9
 It is this memorandum and order which is the subject of this appeal.
 
 The District Court Decision
 
 10
 In vacating the partial summary judgment, Judge Duffy acknowledged that the judgment was, pursuant to Rule 54(b), Fed.R.Civ.P., "final" for purposes of determining its res judicata effect. He held, however, that under Rule 60(b), Fed.R.Civ.P., he was empowered to relieve a party from a final judgment, when, as a matter of equity, such relief was appropriate. He asserted that in the instant case it was appropriate to vacate the earlier judgment so that all class members would be subject to the same relief.
 
 
 11
 Judge Duffy held further that the opinions of the United States Supreme Court in Evans and Teamsters contradicted the reasoning which supported the initial grant of the partial summary judgment, and undermined the legitimacy of its prospective application. Evans, he concluded, held that the 300-day statute of limitations in Title VII was to be strictly applied to acts of discriminatory hiring, and could not be met by applying a theory of continuing harm caused by the initial failure to hire. Teamsters, he found, held that a Title VII claim cannot be premised on pre-Act discrimination, even if the effect of such discrimination is perpetuated, after the effective date of the Act, by a facially neutral seniority system.
 
 
 12
 Judge Duffy concluded that the June, 1975 layoffs were, on the theory advanced by the appellants, "immunized," and that the appellants were "effectively restored to their pre-summary judgment status." To succeed at trial, then, the appellants would have to be able to demonstrate a Title VII violation occurring after the effective date of the Act, and within the period of the statute of limitations. Such a violation would occur if, absent discrimination, a woman would have been hired earlier than her actual date of appointment.
 
 
 13
 Judge Duffy found that the appellants' § 1983 claim was governed by a three-year statute of limitations, by the purposeful discrimination requirement of Washington v. Davis, 426 U.S. 229, 238-48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and by the definition of "person" developed in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), City of Kenosha v. Bruno, 412 U.S. 507, 511-13, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and their progeny.
 
 
 14
 He held further that any sex-based employment distinctions made by the Police Department could be defended only by a showing of "substantial justification," but left the definition of this term for further development at trial.
 
 II.
 
 15
 Appellants assert that Judge Duffy's Rule 54(b) certification of the partial summary judgment made that judgment "final" and res judicata as to their claims. They argue further that Rule 60(b) was used improperly to vacate that judgment, and that the judgment, accordingly should be reinstated.
 
 
 16
 We find it unnecessary to consider the issue of the applicability of Rule 60(b) in this context, however, for we have determined that the certification of the partial summary judgment, pursuant to Rule 54(b), was improper and without operative effect. Rule 54(b) reads in pertinent part:
 
 
 17
 (T)he court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay . . ..
 
 
 18
 To be certifiable under the terms of Rule 54(b) a judgment must possess the requisite degree of finality, and must dispose of at least a single substantive claim. Thus a partial or interlocutory adjudication of a claim cannot properly be certified, even if this is attempted by means of a "partial summary judgment" and even if the requisite "express determination" has been made. See 6 Moore's Federal Practice P 54.30(1), P 54.40.
 
 
 19
 " Finality," for purposes of the application of Rule 54(b), is generally understood as that degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); International Controls Corp. v. Vesco, 535 F.2d 742 (2d Cir. 1976); Western Geophysical Co. of America, Inc. v. Bolt Associates, 463 F.2d 101, 102-03 (2d Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 523, 34 L.Ed.2d 489 (1972); 6 Moore's Federal Practice P 54.30(1) n. 13. This, in turn, is usually defined as a judgment "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). 9 Moore's Federal Practice P 110.08.
 
 
 20
 The meaning of "claim" in this context has been the subject of some dispute, but it is now generally accepted that a claim asserting only one legal right growing out of a single transaction or series of related transactions states a single claim for relief. Liberty Mutual Insurance Co. v. Wetzel,424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); Cinerama, Inc. v. Sweet Music, S.A., 482 F.2d 66, 69 (2d Cir. 1973); Aetna Casualty & Surety Co. v. Giesow, 412 F.2d 468, 470 (2d Cir. 1969); RePass v. Vreeland,357 F.2d 801, 805-06 (3d Cir. 1966); Restatement (Second) of Judgments, § 61, (Tent.Draft No. 1, 1973).
 
 
 21
 It follows that where, as in the instant case, a partial summary judgment is rendered with respect to only part of the relief sought by the appellants, and where consideration of further relief is specifically reserved, judgment is neither "final" nor on an entire "claim." Accordingly, there can be no certification of such a partial summary judgment pursuant to Rule 54(b).
 
 
 22
 This conclusion is well-supported in the case law. In Liberty Mutual Insurance Co. v. Wetzel, supra, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435, the United States Supreme Court held that a partial summary judgment limited to the issue of liability, which reserves the issue of damages and other relief is not "final" within the meaning of 28 U.S.C. § 1291, and not certifiable pursuant to Rule 54(b).
 
 
 23
 In Aetna Casualty & Surety Co. v. Giesow, supra, 412 F.2d 468, this court held that Rule 54(b) certification was improper where damages were awarded, but where the possible award of attorney's fees was reserved for future decision. The court held there that the judgment was not final with respect to any single claim:
 
 
 24
 (T)he partial adjudication of a single claim is not appealable, regardless of whether there is a Rule 54(b) certificate. . . . In Rieser v. Baltimore & Ohio RR Co., 224 F.2d 198, 199 (2d Cir. 1955), cert. denied 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956), we said that the test of multiple claims was "whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." Under this test it seems quite clear that the claim for counsel fees cannot be enforced apart from the claim for breach of the subordination agreement, and to this extent we have only a single claim here. (Citation omitted) (412 F.2d at 470).
 
 
 25
 Similar sentiments were expressed in our holdings in Cinerama, Inc. v. Sweet Music, S.A., supra, 482 F.2d 66; Western Geophysical Co. v. Bolt Associates, supra, 463 F.2d 101; and Taylor v. Board of Education, 288 F.2d 600, 602 (2d Cir. 1961). And other circuits have unanimously adopted this view. See, example, Richerson v. Jones, 551 F.2d 918, 921-22 (3d Cir. 1977); Reserve Mining Co. v. United States, 514 F.2d 492, 532 n. 78 (8th Cir. 1975); RePass v. Vreeland, supra, 357 F.2d 801; Washington Building Services, Inc. v. United Janitorial Services, Inc., 122 U.S.App.D.C. 202, 352 F.2d 678, 682 (1965); Marino v. Nevitt, 311 F.2d 406 (3d Cir. 1963); Leonard v. Socony-Vacuum Oil Co., 130 F.2d 535 (7th Cir. 1942).
 
 
 26
 Where a judgment is not "final," within the terms of 28 U.S.C. § 1291, and hence not certifiable under Rule 54(b), it has no res judicata effect. In the words of the Supreme Court:
 
 
 27
 . . . it is familiar law that only a final judgment is res judicata as between the parties. G. & C. Merriam Co. v. Saalfield and Ogilvie, 241 U.S. 22, 28, 36 S.Ct. 477, 480, 60 L.Ed. 868 (1916).
 
 
 28
 This has been explicated in the American Law Institute's Restatement (Second) of the Law of Judgments, in the following way:
 
 
 29
 Thus when res judicata is in question a judgment will ordinarily be considered final in respect to a claim . . . if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication. Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant on the claim but the amount of the damages, or the form or scope of other relief, remains to be determined. (Emphasis added) (§ 41, comment b. at 3, Tent.Draft No. 1, 1973).
 
 
 30
 See also, Republic of China v. American Express Co., 190 F.2d 334, 339 (2d Cir. 1951).
 
 
 31
 Under the express terms of Rule 54(b) itself, such an interlocutory judgment is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." See John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922); United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970); C. Wright and A. Miller, Federal Practice & Procedure, Civil § 2737, text at notes 92-99. Whether such revision is appropriate in any given case is within the sound discretion of the trial judge.
 
 III.
 
 32
 Having found, then, that the partial summary judgment entered on July 16 was not res judicata, did not require vacation pursuant to Rule 60(b), and, under the terms of Rule 54(b) was subject to revision prior to the entry of final judgment, it remains to determine whether Judge Duffy's vacation of the judgment in light of Teamsters and Evans represented an appropriate exercise of discretion.
 
 
 33
 This matter is best determined by examining whether, in light of the supervening Supreme Court opinions in Teamsters and Evans and the claims of the parties, the entry of partial summary judgment would now be appropriate, if no prior judgment had been entered in this case. The answer, clearly, is no. Significant matters of fact concerning, inter alia, the post-Act occurrence of discriminatory behavior, the timing and scope of relevant EEOC complaints, the bona fides of the seniority system, and possible discriminatory intent on the part of the Police Department, are contested and must be settled at trial. This record, then, presents a good example of the inapplicability of the summary judgment procedure, which is a device relevant exclusively to actions in which there is no genuine issue as to any material fact. Gladstone v. Fireman's Fund Insurance Co., 536 F.2d 1403 (2d Cir. 1976); National Life Insurance Co. v. Solomon, 529 F.2d 59 (2d Cir. 1975); Schum v. South Buffalo Ry., 496 F.2d 328, 331 n. 4 (2d Cir. 1974). See 6 Moore's Federal Practice P 56.04(1); Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745 (1974). It follows that Judge Duffy acted well within his discretion in vacating the partial summary judgment, and setting the matter down for trial.[7] The judgment appealed from is affirmed.[8]
 
 IV.
 
 34
 The trial court will be faced with the task of applying Title VII in light of the recent Teamsters and Evans opinions. Given the procedural posture of this case and the present state of the record, it would be inappropriate for this court to comment at length on the trial court's future treatment of this case. We think it desirable, however, to point out some of the questions to be considered.
 
 
 35
 Section 703(h) of the Act immunized only "bona fide" seniority systems. Bona fides, in the context of the statute requires, at least in part, that the seniority system be applied fairly and impartially to all employees, that it not have its "genesis in (unlawful) discrimination," and that it be maintained free from illegal purposes. Teamsters, 431 U.S. at 355, 97 S.Ct. at 1864. A system designed or operated to discriminate on an illegal basis is not a "bona fide" system. Evans, 431 U.S. at 559, 97 S.Ct. at 1890. See also, James v. Stockham Valves & Fittings Co., 559 F.2d 310 (5th Cir., 1977), and Chrapliwy v. Uniroyal, Inc., 71 F.R.D. 461 (N.D.Ind., 1976). It will now be necessary for the trial court to determine whether the seniority system at issue in this case was designed, operated, or maintained in a discriminatory fashion and if so, whether under Teamsters and Evans its operation represents a violation of Title VII.
 
 
 36
 Second, it must be determined whether retroactive seniority should be awarded as an appropriate remedy for acts of post-Title VII discrimination, if any, which are timely charged, Franks v. Bowman Transportation Co., 424 U.S. 747, 762-70, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), and whether such an award constitutes an appropriate remedy for any proven incidents of post-Act discrimination generally. Franks, 424 U.S. at 757-58, 96 S.Ct. 1251; Teamsters, 431 U.S. at 347, 97 S.Ct. at 1860.
 
 
 37
 We understand the district court's July 28 opinion to require proof at trial that appellants were discriminated against after the effective date of Title VII and within the period of the statute of limitations. It indicates that a violation of Title VII would be found to occur if, absent discrimination, a woman would have been hired earlier than her actual date of appointment (Appendix at 594-95), or under an alternative formulation, if a male police officer had been hired instead of a female who met all appointment requirements and had a higher test score. (Appendix at 590-91).
 
 
 38
 If this understanding of the trial court's order is correct, the order may be unnecessarily narrow, failing to take into account the difference between issues of remedy and issues of violation. See Evans, 431 U.S. at 556-562, 97 S.Ct. at 1888-1890.
 
 
 39
 To succeed at trial, the appellants must be able to demonstrate a Title VII violation occurring after the effective date of the Act and within the period of the statute of limitations, or 300 day charge-filing period. But such a violation is not limited to hiring violations per se.
 
 
 40
 A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the last occurrence of an instance of that policy. Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 246 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 76-80, 478 F.2d 979, 986-90 (1973). See also 118 Cong.Rec. 7565 (March 6, 1972). Furthermore, where an illegal policy is so maintained, relief for injuries sustained even before the beginning of the limitations period is appropriate.
 
 
 41
 Accordingly, in the instant case, it must be determined whether the police force maintained a continuous policy which limited opportunities for female participation in the police force. If such a policy were properly charged after the effective date of the Act and within the statutorily required number of days following the last occurrence of an instance of that policy, then a judicially remediable violation of Title VII would be established.
 
 
 42
 Such a policy of exclusion can be construed broadly to include, inter alia, discriminatory hiring, assignment, transfer, promotion and discharge. See Teamsters, 431 U.S. at 347, 97 S.Ct. at 1860. The unlawful segregation of positions, the use of sex-specific employment examinations or quotas, and the like may be considered.
 
 
 43
 Only when the existence of a Title VII violation has been established is it relevant to consider appropriate remedies under the Act. It is here that proof of the failure to hire women for discriminatory reasons is important, for discriminatory hiring can, in some instances, justify an award of retroactive seniority. See Franks, 424 U.S. at 762-70, 96 S.Ct. 1251; Teamsters, 431 U.S. at 347, 97 S.Ct. at 1860. Such seniority can be awarded to a date as early as the effective date of the Act, Teamsters, 431 U.S. at 355, 97 S.Ct. at 1864, and is not limited by the period of the statute of limitations, which is relevant only to the liability phase of the trial.
 
 
 44
 Finally, in determining whether to grant retroactive seniority, the court must, as with all equitable relief, seek to " 'recreate the conditions and relationships that would have been had there been no' " unlawful discrimination. Franks, 424 U.S. at 769, 96 S.Ct. at 1266; Teamsters, 431 U.S. at 362, 97 S.Ct. at 1868.[9]
 
 
 45
 Affirmed.
 
 
 
 [1]
 The court did not reach the issue of liability under 42 U.S.C. § 1983
 
 
 [2]
 From 1970 to 1973 there were no appointments of patrolmen or policewomen, but 125 men under the age of 21 were appointed to the position of "trainee" on May 8, 1970. These men automatically became patrolmen when they reached age 21
 
 
 [3]
 They also argued that any discrimination which may have occurred was prior to March 24, 1972, the effective date of the Act as to municipal employers
 
 
 [4]
 This opinion was reversed by the United States Supreme Court in United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)
 
 
 [5]
 provided, however, the right or entitlement, if any, of any of the 38 members of the class to displace or "bump" a present incumbent and/or to back pay and/or to retroactive pension contributions into the Police Pension Fund shall be deferred for future determination or resolution. . . . (Appendix at 317-18)
 
 
 [6]
 The injunctions as to 38 members of the plaintiff class who had been granted partial summary judgment were continued as temporary injunctions
 
 
 [7]
 Appellants' argument that Teamsters does not apply to municipal employees is without merit. See Hazelwood School District v. United States, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977)
 
 
 [8]
 We have not reached this conclusion easily; indeed, we are troubled with the result in this case for two important reasons. First, it would seem to make a nullity of judicial determinations valid when they were made, and intended to have permanent effect. Litigation of issues like those raised in the instant case can take years to accomplish years during which governing precedents can change, sometimes substantially. When such changes occur early in the course of litigation little judicial effort is wasted. But when, as here, changes come after factual determinations have been made, the relevant law has been stated, the majority of relief has been granted, and an appeal has been taken and dismissed by this court, the judicial system is necessarily faced with momentous waste of time and industry if virtual relitigation of the issue is required. In those substantive legal areas in which litigation is necessarily protracted, and legal development swift, the dangers of never-ending litigation portrayed so vividly in Dickens' Bleak House become an ever-present possibility. In this sense, the normally salutary doctrines of finality and res judicata, rigorously applied, can become counter-productive, undercutting their intended ends
 Second, we are troubled by the ironic posture of this case. Vacation of the partial summary judgment in favor of the appellants was appropriate here because, in the absence of fixing all relief, the judgment could not properly be certified pursuant to Rule 54(b). But this is in effect to hold that because the appellants did not receive all the relief they sought, receipt of any relief at all was necessarily delayed, and potentially denied. The irony, of course, is that had Judge Duffy granted the appellants injunctive relief and denied, rather than deferred, miscellaneous ancillary relief, Rule 54(b) would have been complied with, and the judgment would have had res judicata effect.
 Thus there may be sound reasons for modifying our concept of finality in cases of this type, or in amending Rule 54(b) to permit certification when the majority of relief has been granted. And there is indeed precedent for taking a more liberal view of finality in limited circumstances analogous to those in the instant case. See, for example, our opinions in American Renaissance Lines, Inc. v. Saxis Steamship Co., 502 F.2d 674 (2d Cir. 1974); Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir. 1964); and Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 87-90 (2d Cir. 1961). See also Bee Machine Co. v. Freeman, 131 F.2d 190, 192-93 (1st Cir. 1942), aff'd 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Sherman v. Jacobson, 247 F.Supp. 261, 267-72 (S.D.N.Y.1965), and Restatement (Second) of Judgments, § 41, comment g (Tent.Draft No. 1, 1973).
 We are bound, however, to apply the present law as we understand it. Hence our approval of the vacation of the partial summary judgment in this case.
 
 
 [9]
 We do not today reach the issue of potential § 1983 liability