Darius H. KEENE, Jr.

v.

Douglas M. COSTLE, et al.

Civ. A. No. 81–0032.

United States District Court,
E.D. Pennsylvania.

July 6, 1984.

Frank Finch, III, Philadelphia, Pa., for plaintiff.

Edward S.G. Dennis, U.S. Atty., Joseph M. Masiuk, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

Plaintiff Darius Keene brought this Title VII action pursuant to 42 U.S.C. § 2000e–16 alleging employment discrimination on account of his race.[1]  Presently before the court is defendants' motion for summary judgment.  Defendants assert that this action must be dismissed because plaintiff failed to file his administrative claim timely.  For the reasons that follow, summary judgment will be entered in favor of defendants.

---

1. Plaintiff also asserted claims under 42 U.S.C. §§ 1985 and 1986 and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  By prior order, I dismissed plaintiff's section 1985 and 1986 claims because section 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, provides the exclusive judicial remedy for claims of employment discrimination by federal employees.  *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).  His ADEA claim was dismissed for failure to exhaust his administrative remedies.  *See* 29 U.S.C. § 633a.

## I. FACTS

Darius Keene is a black male who was employed as an urban planner with the Environmental Protection Agency (EPA) in Philadelphia at the time of the alleged discriminatory actions. On July 26, 1976, plaintiff received a notice from his supervisor, Andrea Perry, that his within-grade increase would be withheld because his job performance was not at an acceptable level of competence. This notice stated that the decision had been based in part upon a conversation Ms. Perry had with plaintiff's previous supervisor, Robert Blanco. Keene had filed Equal Employment Opportunity (EEO) complaints involving Blanco in 1973 and 1976, with the latter complaint withdrawn by plaintiff after he accepted a transfer to a new division within the EPA. (Complaint ¶¶ 14, 16). Upon receiving this July 26, 1976, notice, plaintiff contacted an EEO counselor, Julia Pendleton, in an effort to resolve the issue informally.[2] Pendleton conducted an investigation, but these efforts to resolve the matter proved unsuccessful. After her investigation was completed, she issued a notice of final interview pursuant to 29 C.F.R. § 1613.213(a) on September 22, 1976.[3] This final interview notice informed plaintiff of his responsibility to file a written discrimination complaint within 21 days.[4]

Unfortunately, plaintiff was absent from work from Monday, September 27, 1976, until January 5, 1977, due to a back injury. Upon his return to work, Keene requested that his denial of within-grade increase be reconsidered. See Exhibit J of Plaintiff's Supplemental Memorandum of Law (Doc. No. 15). This request was denied on January 20, 1977, by Daniel Snyder, the regional administrator of the EPA. Due to a recurrence of his back injury, Keene was again absent from work from January 31, 1977, to March 24, 1977. Upon his return, Keene contacted an EEO counselor on March 28, 1977, regarding the July, 1976, denial of within-grade increase, and the January, 1977, denial of his request for reconsideration. In his March, 1977, informal complaint, Keene alleged that these decisions were improperly influenced by Blanco's actions in discussing plaintiff's previous work performance with his present supervisor, Ms. Perry. Plaintiff asserted that Blanco's conduct was in retaliation for his earlier EEO complaints filed against Blanco. The EEO counselor conducted an informal investigation and a notice of final interview was issued on April 18, 1977. Keene filed his formal EEO complaint on May 2, 1977. In this complaint, plaintiff asserted that Blanco's actions were "inappropriate and vindictive." He sought the reinstatement of his 1973 and 1976 EEO complaints and the right "to serve as a professional and in a manner commensurate with [his] education and expertise." This complaint was rejected by the EPA in a final agency decision on May 23, 1979, because it had not been presented

2. By memorandum dated August 30, 1976, George Dukes, an EEO officer, wrote Pendleton that Keene's complaint had been submitted during Pendleton's vacation. According to Dukes, this satisfied the requirement under 29 C.F.R. § 1613.214(a)(1)(i) that the aggrieved person bring the alleged discriminatory matter to the attention of an EEO counselor within 30 days of the date of the matter. See Exhibit A of Plaintiff's Supplemental Memorandum of Law. (Doc. No. 15).

3. Plaintiff disputes that this final interview took place on September 22, 1976. He contends that he was out on disability leave at that time and did not return to work until January 5, 1977. In accordance with the procedure set forth in *Ettinger v. Johnson*, 518 F.2d 648, 652 (3d Cir. 1975), I held a hearing on October 20, 1983, to resolve this issue. See also Bragg v. Reed, 592 F.2d 1136 (10th Cir.1979). At this hearing, I made a factual finding that plaintiff was at work on this date and had received this final interview notice from Pendleton. This finding was based upon an evaluation of the testimony and the demeanor and credibility of the witnesses. This finding is significant because, as discussed *infra*, the aggrieved person must submit a written complaint to an appropriate official within 15 days of the final interview. 29 C.F.R. § 1613.214(a)(1)(ii).

4. The 21 day period stated in this letter for filing the complaint is actually longer than the 15 day period provided by the regulations. See note 3 *supra*. This discrepancy is immaterial because the formal complaint was not submitted until May 2, 1977.

to an EEO counselor within 30 days of the date of the matter complained of as required by 29 C.F.R. § 1613.214(a)(1)(i). On appeal to the EEOC, the final agency decision was affirmed.[5] This action followed.

## II. DISCUSSION

Prior to filing a Title VII complaint in federal court, an aggrieved federal employee must satisfy certain administrative prerequisites. Unlike private sector Title VII complainants who may initiate the process by filing a charge directly with the EEOC, federal employees must complain initially to the agency alleged to have discriminated against them. The regulations require the employee to bring his complaint to the attention of one of the agency's EEO counselors within 30 days of the alleged discriminatory act. The EEO counselor then must investigate the matter and attempt to resolve the issue informally. The EEO counselor must "insofar as practicable" conduct a final interview with the employee within 21 days after the matter was brought to the attention of the EEO counselor. 29 C.F.R. § 1613.213(a). If the matter is not resolved informally, the complainant must file a formal written complaint with the agency within 15 days of the final interview. After the agency's investigation, if relief acceptable to the employee is not offered, he may request an evidentiary hearing before an examiner who is not employed by the agency. If the employee remains dissatisfied with the final agency decision, he may appeal to the EEOC or, in certain cases, to the Merit Systems Protection Board. The employee, however, may proceed to federal court without pursuing administrative relief beyond the agency level. 29 C.F.R. §§ 1613.201–.283. *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 1186–1215 (1983). The regulations, however, also provide that the

time limits may be extended where the employee shows he was not notified and was not otherwise aware of them, or was prevented by circumstances beyond his control from submitting the matter timely. 29 C.F.R. § 1613.214(a)(4).

The issues in the present case are whether plaintiff filed his administrative complaints timely, and, if not, whether his failure to do so should be excused because of any extenuating circumstances. To resolve these questions, it is necessary to identify first the alleged discriminatory matter. *See Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). It must then be determined whether Keene presented this matter to the agency for consideration within the applicable time limits.

Identifying the precise discrimination of which plaintiff complains has not been eased by the numerous administrative actions plaintiff has initiated. The record reveals he has filed no fewer than seven EEO complaints and at least three internal agency appeals of personnel actions. He has also commenced another civil action, C.A. No. 81–2710 (E.D.Pa.), which has been consolidated with the present action. Plaintiff agrees that the only EEO complaint at issue here is the one filed May 2, 1977. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 15 (Doc. No. 11). This formal complaint, when read in conjunction with his informal complaints submitted August, 1976, and March, 1977, reveals the matter causing Keene to believe he was discriminated against was the fact that Blanco, his former supervisor, advised his current supervisor that his work was unsatisfactory when plaintiff was under the former's supervision. He contends this was in retaliation for the previous EEO complaints he

---

5. In the final agency decision, "the matter causing (plaintiff) to believe he had been discriminated against," 29 C.F.R. § 1613.214(a)(1)(i), was believed to be the July 26, 1976, memorandum advising him that his within-grade increase would be denied. The EEOC decision considered the alleged discriminatory matter to be the September 24, 1976, notice that the denial of

within-grade increase had become effective. This discrepancy is immaterial because plaintiff is entitled to a *de novo* review of the timeliness issue, and thus these interim findings at the administrative level are not binding in this court. *See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

had filed against Blanco.[6] Although the net effect of this alleged retaliation was the denial of plaintiff's within-grade increase which became effective September 26, 1976, neither this personnel action nor this date was ever mentioned in the May 2, 1977, EEO complaint. Accordingly, the actual denial of the within-grade increase cannot be considered the discrimination about which complaint is made.[7] Plaintiff first contacted his EEO counselor about Blanco's retaliation in August, 1976. While the exact date of this contact is not clear, *see* note 2 *supra,* it was accepted as timely by the agency. The final interview was held on September 22, 1976, and under 29 C.F.R. § 1614.214(a)(1)(ii), Keene was required to file his formal EEO complaint within 15 days. This complaint, however, was not filed until May 2, 1977, and was therefore untimely.

I have considered the various arguments advanced by plaintiff to excuse the tardy filing, but find them unpersuasive. Plaintiff relies primarily upon the continuing violation theory through which an aggrieved person will be considered to have a timely complaint by showing that a discriminatory practice is continuing, even though the complaint was filed after the expiration of the applicable limitation period. In such a case, a Title VII complaint may be heard if filed within the specified number of days after the last occurrence of an instance of the continuing discriminatory policy. *See Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1080–81 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982); *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978). *See generally* Comment, *The Continuing Violation Theory of Title VII After United Air Lines, Inc. v. Evans,* 31 Hastings L.J. 929 (1980). Plaintiff asserts

that the January 20, 1977, denial by the regional EPA administrator of his request for reconsideration of the denial of within-grade increase constitutes a continuing violation because it contained a reference to and was partially based upon the objectionable statement by Blanco. If this theory was accepted, plaintiff's March 28, 1977, contact with his EEO counselor might have been timely.[8]

The controlling precepts, however, foreclose the consideration of this action as a continuing violation. The Supreme Court first addressed this theory in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The plaintiff in *Evans* was a female flight attendant whose employment was terminated in 1968 by United in accordance with a subsequently-invalidated no-marriage policy. After she was rehired in 1972, she brought a Title VII action on account of United's refusal to recognize any seniority for her prior service. The Court rejected her claim that this refusal to grant her seniority credit constituted a continuing violation and held her claim to be barred by her failure to file a discrimination charge within 90 days of her separation from employment in 1968. The Court stated, "Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Id.* at 558, 97 S.Ct. at 1889 (emphasis in original).

The Court reiterated the importance of focusing upon present violations, rather than present effects of past acts, in *Delaware State College v. Ricks,* 449 U.S. 250,

---

6. A claim of retaliatory discrimination is a recognized cause of action under 42 U.S.C. § 2000e–16. *See Sperling v. United States,* 515 F.2d 465, 484 (3d Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976).

7. The denial of his within-grade increase appears to be the basis of plaintiff's other civil action, No. 81–2710.

8. This analysis, of course, assumes *arguendo* that his disability absence from January 31, 1977, to March 24, 1977, constitutes "circumstances beyond his control" for the purposes of an equitable extension of time under 29 C.F.R. § 1613.214(a)(4). Given the present discussion, it is unnecessary to decide this issue.

101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In *Ricks,* the plaintiff was denied tenure on March 13, 1974. Like many other colleges and universities, Delaware State College offers faculty members who are denied tenure one year terminal contracts, rather than immediate discharge. On June 26, 1974, Ricks was offered and accepted this terminal contract. In the meanwhile, he had filed a grievance with the school regarding its tenure decision. The district court held the filing period began to run on June 26, 1974, when plaintiff accepted his terminal contract and dismissed the complaint because of his failure to file within 180 days of that date.[9] The Supreme Court affirmed, and in so doing, rejected plaintiff's arguments that the filing period did not begin until either the expiration of the one year contract or the date of the denial of his grievance. The Court stated that the limitation period started at the time the tenure decision was made and communicated to Ricks. *Id.* at 258, 101 S.Ct. at 504. "That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later ... [T]he proper focus is upon the time of the *discriminatory* acts, not upon the time at which the consequences of the acts became most painful." *Id.* (emphasis in original). The Court also rejected the contention that the pendency of Rick's grievance tolled the running of the limitation period. The Court stressed that the grievance procedure was merely a remedy for a prior decision, not an opportunity to influence the decision before it was made. *Id.* at 261, 101 S.Ct. at 505.

■ Returning to the present case, it is clear that under *Evans* and *Ricks,* the January 20, 1977, denial of plaintiff's request for reconsideration cannot be considered a continuing violation. The matter complained of—the alleged improper statement by Blanco to Perry during the course of plaintiff's evaluation for a within-grade increase—was known to plaintiff when he received the notice of denial of his within-

grade increase on July 26, 1976. The fact that this statement had an *effect* upon the denial of the request for reconsideration is of no consequence. Moreover, the reconsideration requested in the present case is similar to the grievance in *Ricks.* The request for reconsideration was a remedy for a prior decision, rather than an opportunity to influence the decision before it is made. As such, it may not be used to toll the limitation period. *See Ricks,* 449 U.S. at 261, 101 S.Ct. at 505.

■ Because the January 20, 1977, denial of plaintiff's request for reconsideration cannot offer grounds for making his March 28, 1977, contact with his EEO counselor timely, I must consider Keene's alternative argument that his timely contact with his counselor in August, 1976, provides a basis to treat his May 2, 1977, formal EEO complaint as properly filed. Although he did not file this complaint within 15 days after his final interview as required by 29 C.F.R. § 1613.214(a)(1)(ii), plaintiff argues that the late filing should be excused because the agency did not conduct the final interview within 21 days after the matter was brought to the attention of the EEO counselor as provided by 29 C.F.R. § 1613.-213(a). Plaintiff's contention cannot succeed. Contrary to his assertion, this is not a situation where the government has failed to comply with mandatory regulations. The provision at issue says only that the final interview should be conducted "insofar as is practicable" within 21 days after the complainant contacts an EEO counselor. Moreover, to accept plaintiff's claim would run counter to the congressional intent to limit an employer's liability for stale claims. "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their claims, also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S. at 256–57, 101 S.Ct. at 503. *See Bronze Shields, Inc. v. New Jersey De-*

---

9. The 90 day period at issue in *Evans* was subsequently enlarged to a 180 day limitations period. *See* 86 Stat. 105 (1972), 42 U.S.C. § 2000e–5(e).

*partment of Civil Service,* 667 F.2d at 1082.

The final issue to be addressed is whether any circumstances exist to permit the late filing to be excused pursuant to 29 C.F.R. § 1613.214(a)(4). This section provides for an extension of the limitation periods when the plaintiff can show he was not notified of the time limits and was not otherwise aware of them, or was prevented by circumstances beyond his control from submitting the matter within time limits.[10] Although plaintiff disputes he ever received the September 22, 1976, notice of final interview which told him of the duty to file a formal agency complaint within 21 days,[11] I have previously found that Keene was issued this notice on September 22, 1976. *See* note 3 *supra.* Accordingly, because plaintiff was in fact notified of the time limits, the question is whether he was prevented by circumstances beyond his control from submitting his agency complaint within the proper time after his final interview.

█ It is undisputed that plaintiff was not at work from late September, 1976, until January 5, 1977, due to a back injury. However, plaintiff was present from January 5, 1977, until January 31, 1977, when he again was forced to leave until March 24, 1977, because of a recurrence of this injury. Plaintiff has failed to show there were any exceptional circumstances that existed from January 5, 1977, to January 31, 1977, which prevented his filing his agency complaint during this period. Ac-

cordingly, because he did not file a timely agency complaint after receiving his final interview and has not established the existence of extenuating circumstances to permit an extension of the 15 day limit set forth in the regulations, his complaint must be dismissed.

---

**10.** In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII suit, but rather is subject to waiver, estoppel, and equitable tolling. The courts of appeals are divided over whether *Zipes* applies to employees of the federal government or should be limited to suits by private sector employees. The District of Columbia Circuit and the Eleventh Circuit have interpreted *Zipes* broadly while the Seventh Circuit has restricted it to private employees. *Compare Milam v. U.S. Postal Service,* 674 F.2d 860 (11th Cir.1982) and *Saltz v. Lehman,* 672 F.2d 207 (D.C.Cir.1982) *with Sims v. Heckler,* 725 F.2d 1143 (7th Cir.1984). In *Sims,* the Sev-

enth Circuit held that due to principles of sovereign immunity, the time limits set forth in 29 C.F.R. § 1613.214(a)(1) are jurisdictional. The *Sims* decision is persuasive because unlike the regulations pertaining to federal government employees, those applicable to private sector employees contain no provisions for equitable extensions of time similar to the ones set forth at 29 C.F.R. § 1613.214(a)(4). Therefore, I agree with the Seventh Circuit that the circumstances permitted an extension of time for filing an agency complaint under 42 U.S.C. § 2000e–16 are limited to those described in the regulations and may not be extended by *Zipes.*

**11.** *See* note 4 *supra.*