**Joe OCHS, Plaintiff and Appellant,**

**v.**

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, and Time Insurance Company, and ITT Midwestern Life Insurance Corporation, Defendants and Respondents.**

**No. 11822.**

Supreme Court of South Dakota.

May 26, 1977.

Gale E. Fisher of May, Johnson & Burke, Sioux Falls, for plaintiff and appellant.

John E. Simko of Woods, Fuller, Shultz & Smith, Steven W. Sanford of Braithwaite & Cadwell, Sioux Falls, for defendants and respondents.

WOLLMAN, Justice.

On February 25, 1974, plaintiff commenced separate actions against Northwestern National Life Insurance Company (Northwestern), Time Insurance Company (Time), and ITT Midwestern Life Insurance Corporation (ITT), alleging that defendants had refused to make payments under certain disability policies issued to plaintiff. The complaint further alleged that said refusal on the part of defendants was vexatious and/or without reasonable cause. All three defendants filed answers; in addition, Time and ITT asserted counterclaims alleging that plaintiff's applications for the policies issued by Time and ITT were of such a nature as to render the policies null and void and to entitle Time and ITT to recoup the benefits previously paid to plaintiff under the policies.

In January of 1975, plaintiff made a motion to amend the complaints, which motion was granted on July 18, 1975. The amended complaints purported to state two causes of action. The first cause of action was essentially the same as the allegations set forth in the original complaints. The second cause of action restated the allegations of the first cause of action and then alleged that defendants were guilty of misrepresentation in that at the time they sold the policies to plaintiff, defendants concealed from plaintiff their true intention to delay unreasonably and to deny payments of benefits lawfully due plaintiff under the policies, that such concealment and misrepresentation was for the purpose of inducing plaintiff to purchase the policies, and that plaintiff had in fact been induced to purchase the policies in reliance upon these representations . Further, plaintiff alleged that defendants had demonstrated bad faith in the interpretation of the provisions of their policies and the payments of benefits due thereunder, there being no reasonable cause or basis for the delay and denial of the payments of benefits under the policies. Continuing, the second cause of action alleged that defendants had made the promises contained in their policies without any intention of performing them or of interpreting or construing in good faith the terms and provisions of the policies; that as a direct and proximate result of defendants' conduct in delaying and denying benefits due plaintiff under the policies, plaintiff had been subjected to economic loss and had suffered physical, mental and emotional distress and discomfort. Finally, the second cause of action alleged that defendants had acted in bad faith, oppressively and maliciously towards plaintiff and with intent to deceive and defraud him, and had intentionally caused or acted with such reckless disregard of the probability of causing emotional distress and other damages as to justify the award of punitive damages. The prayer for relief asked for compensatory damages for benefits due under the policies, special and general damages in an amount to be determined by the proof adduced at trial, and for punitive damages in the amount of $1,000,000 from both Time and ITT and in the amount of $500,000 from Northwestern.

Defendants Time and ITT made a motion to dismiss plaintiff's second cause of action on the grounds that: (1) it did not state a cause of action against those defendants; (2) that SDCL 58–12–3 provides the exclusive remedy; (3) that SDCL 21–2–1 and 21–2–2 limit the amount of recovery to the amount due under the terms of the respective insurance contracts; (4) that SDCL 21–1–4 authorizes punitive damages only where expressly allowed by statute, and (5) that SDCL 21–1–5 limits the damages to the amount plaintiff could recover had there been full performance. Defendant Northwestern's answer to plaintiff's amended complaint contained a motion to dismiss the second cause of action on the ground that it failed to state a claim upon which relief could be granted.

On December 16, 1975, the trial court granted defendants' motions to dismiss

plaintiff's second cause of action, made an express determination that there was no just reason for delay in the entry of final judgment dismissing plaintiff's second cause of action upon the merits, and directed that such final judgment should be entered forthwith. It is from the judgment of dismissal entered with respect to the second cause of action set forth in his amended complaints that plaintiff has appealed.*

SDCL 15–6–54(b) provides:

"When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

■ Apparently the parties have assumed that once a trial court makes an express determination that there is no just reason for delay and makes an express direction for the entry of a final judgment with respect to one or more but fewer than all of the claims in an action pursuant to SDCL 15–6–54(b) (RCP 54(b)), no further question exists concerning the appealability of the partial judgment entered pursuant thereto. Although the wording of RCP 54(b) differs from Federal Rule 54(b) (FRCP 54(b)), see *Shryock v. Mitchell Concrete Products, Inc.,* 87 S.D. 566, 212

N.W.2d 498, we believe that there is no substantial difference between the two rules with respect to the question whether an appellate court has the power to determine whether a partial judgment entered in accordance with those rules is in fact appealable. With respect to FRCP 54(b), the United States Supreme Court has clearly held that although in the first instance it is for the trial court to determine that no just reason exists for delay in the entry of judgment and to make an express direction for the entry of final judgment, these matters are subject to review on appeal. *Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297; *Cold Metal Process Co. v. United Engineering and Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311. See also *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435; C. Wright & A. Miller, Federal Practice and Procedure § 2655 (1973). We think that the same interpretation should be given to RCP 54(b). Accordingly, in this case and in all future cases in which the trial court has made an express determination and direction pursuant to RCP 54(b), we will review the question of appealability of a judgment entered pursuant thereto, either on the motion of the respondent or on our own motion. *Shryock v. Mitchell Concrete Products, Inc.,* supra.

■ In reviewing a judgment entered pursuant to RCP 54(b) an appellate court must first determine whether the action in fact involves multiple claims and thus falls within the purview of RCP 54(b) and then must decide whether the trial court abused its discretion in making the determination that there was no just reason for delay in entering judgment with respect to one or more but fewer than all of the multiple claims. C. Wright & A. Miller, supra, § 2655. Although the question whether there are multiple parties involved in an

---

* The trial court granted defendants' motion to consolidate the cases for trial and denied plaintiff's subsequent motion to separate the cases. Defendants have moved to dismiss that portion of plaintiff's appeal that attempts to have reviewed the latter order. In view of our deci-

sion on plaintiff's appeal from the dismissal of the second cause of action, we need not reach the merits of plaintiff's contention that the order in question is properly reviewable under the provisions of SDCL 15–26–19.

action is usually not difficult to resolve, the same is not necessarily true with respect to the question whether multiple claims for relief exist.

"By its own terms, Rule 54(b) applies only when there are either multiple claims for relief, 'whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved.' Unfortunately, it is not always easy to tell whether a case involves multiple claims (to which Rule 54(b) is applicable) or a single claim supported by multiple grounds (to which Rule 54(b) is not applicable). The question of what constitutes multiple claims becomes crucial when the court purports to direct the entry of a judgment under Rule 54(b) on one or more but fewer than all the claims in an action. The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure. Difficulties even occur in a case that clearly involves multiple claims because the rule requires that the entirety of at least one of those claims be decided with finality." C. Wright & A. Miller, supra, § 2657, at 47. (footnotes omitted)

Prior to the time that the Supreme Court issued its decisions in the *Sears Roebuck* and *Cold Metal Process Company* cases, supra, the Court of Appeals for the Second Circuit set forth the following test for determining whether multiple claims exist:

"The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." *Rieser v. Baltimore & Ohio Railroad Co.*, 2 Cir., 224 F.2d 198, 199.

In analyzing this test and in concluding that it appears to be consistent with the Supreme Court's decisions in the *Sears Roebuck* and *Cold Metal Process Company* cases, Professors Wright and Miller have said:

"A single claimant presents multiple claims for relief under the Second Circuit's formulation when his possible recoveries are more than one in number

and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action. Illustratively, in the *Sears* case defendant could have been held liable both under the antitrust acts and the common law. Since there were two possible recoveries and they were not mutually exclusive, there were two claims for relief, even though at least in part they both were based on the same facts. However, when a claimant presents a number of legal theories, but will be permitted to recover only on one of them, his bases for recovery are mutually exclusive, or simply presented in the alternative, and he has only a single claim for relief for purposes of Rule 54(b). Similarly, when plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and subdivision (b) does not apply." C. Wright & A. Miller, supra, § 2657, at 52.

In *Liberty Mutual Insurance Co. v. Wetzel*, supra, the United States Supreme Court recently stated:

"We need not here attempt any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the Rules. See 6 J. Moore, Federal Practice ¶¶ 54.24, 54.33. It is sufficient to recognize that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." 424 U.S. at 743, 96 S.Ct. at 1206, 47 L.Ed.2d at 441, n. 4.

■ When analyzed in the light of these guidelines, plaintiff's complaints in reality state but a single claim for relief, for however one looks at the second cause of action, it sets forth an additional claim for relief based upon defendants' alleged breach of contract. True, the allegations represent an artful attempt to avoid the statutory limitation on damages for breach of contract, SDCL 21-2-1 and 21-2-2, and the statutory bar to punitive damages in claims arising out of breach of contract, SDCL 21-1-4 and 21-3-2, but at their core they are based upon defendants' breach of their

contractual duty to pay benefits due under their policies. As we read the complaints, there could be no recovery under the second cause of action unless plaintiff proved a breach of defendants' duty to make such payments. So considered, the claim set forth in the second cause of action is not of such a nature that it could have been separately enforced and thus is not a multiple claim within the meaning of RCP 54(b), *Rieser v. Baltimore & Ohio Railroad Co.,* supra; *Campbell v. Westmoreland Farm, Inc.,* 2 Cir., 403 F.2d 939; *United States v. Kocher,* 2 Cir., 468 F.2d 503, but rather is so inextricably linked to the cause of action based upon breach of contract as to constitute a single claim. *Aetna Casualty & Surety Company v. Giesow,* 2 Cir., 412 F.2d 468.

Because we hold that the judgment entered pursuant to the order dismissing plaintiff's second cause of action is not appealable under RCP 54(b), we do not reach the merits of plaintiff's contention that the second cause of action states a claim upon which relief could be granted. For an interesting discussion of some aspects of the questions raised, however, see Sullivan, "Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change," 61 Minn.L.Rev. 207 (1977).

Although our holding that this case does not involve multiple claims for relief renders unnecessary a holding on the second facet of appellate review of RCP 54(b) certifications, because this is the first occasion we have had to address ourselves to the matter in a published opinion, we feel an obligation to express some general observations concerning the factors that are to be considered by trial courts in deciding whether a partial judgment should be certified for appeal.

■ Once it has been determined that an action involves multiple claims for relief and thus satisfies the first test of appealability under RCP 54(b), the appellate court must determine whether the trial court abused its discretion in making an express determination that there was no just reason for delay in entering final judgment. This question is not always easy of resolution, for there is no hard and fast test that can be applied in a mechanical manner. The following quotation from a decision of the Court of Appeals for the Third Circuit seems to us to represent a thoughtful, workable approach to the application of FRCP 54(b) and, accordingly, to RCP 54(b):

"We start with the familiar and generally accepted conception that Section 1291 of Title 28 of the United States Code, limiting the normal jurisdiction of courts of appeal to the reviewing of final judgments, has jurisprudential significance beyond mere technicality. It is an authoritative application and implementation of a basic and persisting policy against piecemeal appeals. See *Cobbledick v. United States,* 1940, 309 U.S. 323, 324–326, 60 S.Ct. 540, 84 L.Ed. 783. Rule 54(b) attempts to make a reasonable accommodation between that policy and those problems of the timing of review which have been accentuated by the liberalized joinder of claims, counterclaims, cross-claims and third-party claims in one law suit, as permitted and encouraged by the present Rules of Civil Procedure. See *Dickinson v. Petroleum Conversion Corp.,* 1950, 338 U.S. 507, 511–512, 70 S.Ct. 322, 94 L.Ed. 299.

"Thus, the procedure contemplated by Rule 54(b) is usually more than a formality. Perhaps it can properly be viewed as mere formality, albeit an essential prerequisite of immediate appeal, in those cases where it is clear that the disposition of a portion of the litigation has been such as would clearly have constituted an appealable final judgment under Section 1291 of Title 28 before the adoption of the Rules of Civil Procedure. But otherwise and ordinarily an application for a 54(b) order requires the trial judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. Indeed, the draftsmen of this Rule have made explicit their thought that it would serve only to authorize 'the exercise of a discretionary power to afford a remedy in the infre-

quent harsh case * * *.' 28 U.S.C.A., Federal Rules of Civil Procedure, 118–119 note. It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule. See 6 Moore, Federal Practice, 1953, 264–65." *Panichella v. Pennsylvania Railroad Co.*, 3 Cir., 252 F.2d 452, 454.

In *Allis-Chalmers Corporation v. Philadelphia Electric Co.*, 3 Cir., 521 F.2d 360, the court of appeals reiterated the principles governing the proper exercise of discretion with respect to Rule 54(b) certifications as outlined in the *Panichella* case, supra, and enumerated some of the other factors that courts have considered in such cases:

"In reviewing 54(b) certifications, other courts have considered the following factors, *inter alia* : (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b)." 521 F.2d at 364. (footnotes omitted)

The court went on to summarize the principles to be applied by the district courts in exercising their discretion whether to grant Rule 54(b) certifications:

"The guiding principles established by *Panichella*, supra, and succeeding cases, may therefore be summarized: (1) the burden is on the party seeking final certification to convince the district court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion; (2) the district court must balance the competing factors present in the case to determine if it is in the best interest of sound judicial administration and public policy to certify the judgment as final; (3) the district court must marshall and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated." 521 F.2d at 365. (footnote omitted)

See also C. Wright & A. Miller, supra, § 2659.

Although we need not decide whether the trial court abused its discretion in entering the certification in the instant case, we do express our general agreement with the principles outlined in the authorities cited above, and we would expect our trial courts to be guided by them in future cases, for it is to be expected that appeals under RCP 54(b) will be considered appropriate in only the rare case, just as petitions for appeals from intermediate orders under the provisions of SDCL 15–26–9 through 15–26–18 are granted only infrequently.

Finally, we note that in addition to discussing the principles governing Rule 54(b) certifications, the court in the *Allis-Chalmers* cases, supra, stated:

"A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of 'no just reason for delay.' The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." 521 F.2d at 364. (footnote omitted)

The court then went on to hold that in all Rule 54(b) certifications it would require the district courts to make a statement of the reasons supporting the decision to make the certification. In reaching this decision, the court adopted the practice suggested by

the Court of Appeals for the Second Circuit in *Gumer v. Shearson, Hammill & Co., Inc.,* 2 Cir., 516 F.2d 283, wherein the court stated:

"We suggest to the district courts that in the future it would be helpful to us in reviewing the exercise of discretion in granting a Rule 54(b) certificate if the court, rather than incorporating in the certificate the conclusory language of Rule 54(b), would make a brief reasoned statement in support of its determination that 'there is no just reason for delay' and its express direction for 'the entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent. * * *" 516 F.2d at 286. (footnote omitted)

We believe that the views expressed by the courts in the *Allis-Chalmers* and *Gumer* cases, supra, with respect to FRCP 54(b) certifications are sound and that we should follow them with respect to certifications under RCP 54(b). Accordingly, henceforth we will expect that our trial courts will include in their certifications of appeals under RCP 54(b) the reasons in support of their decision to enter such certifications.

The appeal is dismissed and the case is remanded to the circuit court for further proceedings.

All the Justices concur.