KENNECOTT CORPORATION; Morton Thiokol, Inc.; Barrick Resources (USA) Inc.; and Hercules, Incorporated, Plaintiffs and Appellants,

v.

UTAH STATE TAX COMMISSION; R. Hal Hansen, Chairman of the Utah State Tax Commission; Roger O. Tew, Utah State Tax Commissioner; Joe B. Pacheco, Utah State Tax Commissioner; G. Blaine Davis, Utah State Tax Commissioner; Tom L. Allen, Utah State Treasurer; Arthur L. Monson, Salt Lake County Treasurer; and Grant L. Pendleton, Tooele County Treasurer, Defendants and Appellees.

No. 890416.

Supreme Court of Utah.

June 14, 1991.

James B. Lee, Kent W. Winterholler, Maxwell A. Miller, Salt Lake City, for plaintiffs and appellants.

David E. Yocum, Karl Hendrickson, Bill Thomas Peters, Salt Lake City, for county defendants and appellees.

R. Paul Van Dam, Ralph Finlayson, Salt Lake City, for state defendants and appellees.

Ronald L. Elton, Salt Lake City, for Tooele County.

ZIMMERMAN, Justice:

Appellants Kennecott Corp., Morton Thiokol, Inc., Barrick Resources (USA) Inc., and Hercules, Inc. (collectively "the taxpayers"), brought an action against the

Utah State Tax Commission and several county and state tax officials (collectively "the tax collectors"). The taxpayers contend that section 17–19–15 of the Code, which imposes a levy to provide funds to cover expenses incurred by Utah's counties in assessing, collecting, and distributing property taxes, is unconstitutional.[1] The taxpayers advance claims of invalidity under three separate constitutional provisions: (i) the fourteenth amendment of the United States Constitution, (ii) article XIII, section 5 of the Utah Constitution, and (iii) article I, sections 7 and 24 of the Utah Constitution. U.S. Const. amend. XIV; Utah Const. art. XIII, § 5; Utah Const. art. I, §§ 7, 24. The complaint seeks an injunction against the enforcement of section 17–19–15 and the recovery of taxes paid under protest.

The taxpayers filed a motion for partial summary judgment, asking for judgment on one of their three claims of unconstitutionality, specifically, a declaration that section 17–19–15 violates article XIII, section 5 of the Utah Constitution.[2] The tax collectors filed a cross-motion for summary judgment, asking the court to hold section 17–19–15 constitutional on all three grounds raised in the complaint.

The district court denied the taxpayers' motion and granted the tax collectors' motion, but only in part. The court held that the taxpayers lacked standing to raise the article XIII, section 5 claim. The court declined to grant summary judgment on the other constitutional claims, and they remain before the trial court. The trial court certified its article XIII, section 5 ruling for immediate appeal under rule 54(b). Utah R.Civ.P. 54(b). The taxpayers then appealed the grant of partial summary judgment.

The first issue we address is not raised by either party, to wit: whether the otherwise unappealable interlocutory order of the district court was properly certified under rule 54(b) and is therefore properly before us. As we have noted previously, the failure of a party to raise an issue of subject matter jurisdiction is not dispositive. "[A]cquiesence of the parties is insufficient to confer jurisdiction and ... a lack of jurisdiction can be raised at any time by either party or by the court." *Olson v. Salt Lake City School Dist.,* 724 P.2d 960, 964 (Utah 1986); *see also Utah Restaurant Ass'n v. Davis,* 709 P.2d 1159, 1160 (Utah 1985); *Bailey v. Sound Lab, Inc.,* 694 P.2d 1043, 1044 (Utah 1984). We raise it here, *sua sponte,* as we did in *Olson.*

The initial question of whether an order is eligible for certification under rule 54(b), i.e., whether the order is "final," is a question of law. *See Pate v. Marathon Steel Co.,* 692 P.2d 765 (Utah 1984); *Little v. Mitchell,* 604 P.2d 918 (Utah 1979); *see also Curtis–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 11, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980). Therefore, we review the trial court's decision on this point for correctness. *See, e.g., Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

Rule 54(b) of the civil rules permits the trial court to certify certain interlocutory orders and, by so doing, force the appellate court to entertain the appeal. *See Pate,* 692 P.2d at 767–68. Rule 54(b) reads in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, and/or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination by the court that there is no just

---

**1.** We decided the constitutionality of section 17–19–15 in *Mountain States Tel. & Tel. Co. v. Garfield County,* 811 P.2d 184 (Utah 1991).

**2.** Article XIII, section 5 provides as follows: The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respec-

tively, the power to assess and collect taxes for all purposes of such corporation. Notwithstanding anything to the contrary contained in this Constitution, political subdivisions may share their tax and other revenues with other political subdivisions as provided by statute.

Utah Const. art. XIII, § 5.

reason for delay and upon an express direction for the entry of judgment.

Utah R.Civ.P. 54(b).

In *Pate,* we described in different words the three requirements for proper certification under rule 54(b):

First, there must be multiple claims for relief or multiple parties to the action. Second, the judgment appealed from must have been entered on an order that would be appealable but for the fact that other claims or parties remain in the action. Third, the trial court, in its discretion, must make a determination that "there is no just reason for delay" of the appeal.

*Pate,* 692 P.2d at 767 (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civ. 2d* § 2656, at 47–48 (1983)).

In the present case, we focus on the second of the *Pate* criteria: Was the order upon which the judgment and certification entered one that would otherwise have been appealable absent the other claims? This is what is meant by the language in rule 54(b) that the certified order be one that could be characterized as a *"final judgment* as to one or more ... of the claims...." Utah R.Civ.P. 54(b) (emphasis added). Such a final order must " 'wholly' dispose of one or more, 'but fewer than all,' of the claims or parties." *Olson,* 724 P.2d at 964 (quoting *Pate,* 692 P.2d at 768). As we stated in *Olson:*

" 'Finality,' for purposes of the application of Rule 54(b), is generally understood as that degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291. [Citations omitted.] This, in turn, is usually defined as a judgment 'which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Catlin v. United States,* 324 U.S. 229, 233 [65 S.Ct. 631, 633, 89 L.Ed. 911] ... (1945).

*Olson,* 724 P.2d at 964–65 (quoting *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir.1978)) (bracketed material in original).

Although these cases may aid in understanding the term "final" as used in the rule, they do not answer the difficult question of when there is such a final determination of what can be characterized as "a separate claim." As a leading treatise has noted, determining whether the trial court's disposition of some but not all parts of a cause of action is a final judgment for purposes of rule 54(b) is not an easy task:

The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure. Difficulties even occur in a case that clearly involves multiple claims because the rule requires that the entirety of at least one of those claims be decided with finality. There is no generally accepted test that is used to determine whether more than one claim for relief is before the court.

10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civ.2d* § 2657, at 60–61. Although we have addressed rule 54(b) relatively often in recent cases, no Utah decision has considered this issue in depth. *See Lane v. Messer,* 731 P.2d 488 (Utah 1986); *Olson v. Salt Lake City School Dist.,* 724 P.2d 960 (Utah 1986); *Williams v. State,* 716 P.2d 806 (Utah 1986); *Pate v. Marathon Steel Co.,* 692 P.2d 765 (Utah 1984).

In determining the standard for "finality" of a separate claim under rule 54(b), some background is useful. The historical rule is that except in a narrow category of situations, no order of a trial court is appealable until a final judgment is entered on all issues. *Attorney Gen. of Utah v. Pomeroy,* 93 Utah 426, 73 P.2d 1277 (1937). At that point, the final judgment and all preceding interlocutory orders may be reviewed. *Pate,* 692 P.2d at 767–68. The principle underlying this rule is that interlocutory appeals should be avoided because they present appellate courts with multiple appeals involving narrow issues taken out of the context of the whole case which slow down the final determination of the matter. *Pomeroy,* 93 Utah at 447–48, 73 P.2d at 1287; *see Local P–171, Amalgamated Meat Cutters and Butcher Workmen of N. Am. v. Thompson Farms Co.,* 642 F.2d 1065, 1070–71 (7th Cir.1986) (decided under the federal rule); Advisory Committee on

Rules for Civil Procedure, Report of Proposed Amendments, *reprinted in* 5 F.R.D. 437, 472 (1946) (discussing federal rule).

Over the years, however, certain exceptions to this rule against interlocutory appeals have developed in recognition of the fact that under certain circumstances, the reasons for permitting a particular interlocutory appeal or class of appeals are sufficient to overcome the policies underlying the general rule requiring finality. See *Pomeroy*, 93 Utah at 471–72, 73 P.2d at 1297. One approach to allowing interlocutory appeals is expressed in rule 54(b) of the Federal Rules of Civil Procedure and its Utah counterpart, also denominated rule 54(b). *See* Fed.R.Civ.P. 54(b); Utah R.Civ.P. 54(b). This approach gives power to the trial court to certify a certain class of orders and thereby make them appealable as of right, effectively forcing the appellate court to review them. The federal rule, adopted in 1937, was essentially copied when the federally modeled Utah Rules of Civil Procedure were first implemented in 1950.

A second approach to allowing interlocutory appeals is contained in Utah Rule of Appellate Procedure 5 and its predecessor, Utah Rule of Civil Procedure 72(b), originally adopted in 1950. *See* Utah R.App.P. 5; Utah R.Civ.P. 72(b) (1950) (repealed 1985). Under this approach, the appellate court, rather than the trial court, is given control over which interlocutory orders may be appealed. Rule 5 permits an appellate court to grant a party leave to appeal from any interlocutory order entered by a trial court. However, the rule informs the parties that appellate courts will permit such appeals only when there are good reasons for departing from the general rule that appeals should be taken only from final judgments. "An appeal from an interlocutory order may be granted only if it appears that the order involves substantial rights and may materially affect the final decision or that a determination of the correctness of the order before final judgment will better serve the administration and interests of justice." Utah R.App.P. 5(e).

It is important to note that Utah has a long history of permitting interlocutory appeals under certain circumstances, subject always to the discretionary control of the appellate court. This analogue to the right recognized in Utah Rule of Appellate Procedure 5(b) was clearly recognized in *Attorney General of Utah v. Pomeroy*, 93 Utah 426, 73 P.2d 1277 (1937), if not before. *See Ketchum Coal Co. v. Pleasant Valley Coal Co.*, 50 Utah 395, 404–05, 168 P. 86, 89 (1917). In *Pomeroy*, Justice Wolfe stated that what amounts to an appeal could be entertained by an appellate court whenever it determined it was in the interest of the equitable administration of justice to do so. *Pomeroy*, 93 Utah at 471–72, 73 P.2d at 1297–98.

In 1950, this law became part of the Utah Rules of Civil Procedure through the adoption of rule 72(b). In the notes explaining this rule, the compilation committee noted that this was a new provision to Utah's procedural rules and was borrowed from the Iowa rules of procedure and based on Utah court decisions that permitted appeal of interlocutory orders under a special writ. Utah R.Civ.P. 72(b) (1950) (repealed 1985) (compiler's notes). The compiler's note stated that the "rule will make it possible for the Supreme Court to allow an interlocutory appeal where such a review would be in the best interests of justice." *Id.* At this point, there was no federal counterpart to rule 72(b).

With this background, we proceed to examine the finality requirements of separate claims of Utah Rule of Civil Procedure 54(b). Because rule 54(b) of the Utah rules is taken from the Federal Rules of Civil Procedure, we freely look to federal authority interpreting that rule. *See Olson*, 724 P.2d at 965 n. 5; *Pate*, 692 P.2d at 767 n. 1. However, we certainly are not bound by any particular federal interpretation, especially where the rules operate in different underlying environments.

The federal courts have taken two basic approaches to determining when a claim is separate and an order disposing of it is eligible for treatment as a "final" judgment and certification under rule 54(b).

The first is exemplified by the Seventh Circuit. It requires that before a claim can be considered separate, the facts underlying it must be different than those underlying other claims in the action. *See Indiana Harbor Belt R.R. v. American Cyanamid Co.*, 860 F.2d 1441, 1445 (7th Cir.1988); *Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036, 1037 (7th Cir.1988); *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 702 (7th Cir.1984).[3] The Seventh Circuit takes the position that several legal theories based on one set of facts do not convert the theories into separate claims for purposes of rule 54(b). *Indiana Harbor*, 860 F.2d at 1445.

■■■ In determining the separateness of a claim, the Seventh Circuit "focuses on the degree of factual overlap between the issue certified for appeal and the issues remaining in the district court." *Id.; see also Dominik*, 852 F.2d at 1037; *National Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir.1986); *FDIC v. Elefant*, 790 F.2d 661, 664 (7th Cir.1986). When this factual overlap is such that separate claims appear to be based on the same operative facts or on the same operative facts with minor variations, they are held not to constitute separate claims for rule 54(b) purposes. *See, e.g., Indiana Harbor*, 860 F.2d at 1445; *Dominik*, 852 F.2d at 1037; *Elefant*, 790 F.2d at 664; *McNeil*, 784 F.2d at 821; *Jack Walters*, 737 F.2d at 702; *Minority Police Officers Ass'n v. City of South Bend*, 721 F.2d 197, 200 (7th Cir.1983).

The Seventh Circuit's approach is based on what the court "perceive[d] to be the most important purpose behind the drafters' decision to confine the scope of Rule 54(b) to situations where one of multiple claims is fully adjudicated—'to spare the court of appeals from having to keep relearning the facts of a case on successive appeals.'" *Indiana Harbor*, 860 F.2d at 1444 (quoting *Jack Walters*, 737 F.2d at 702); *cf. Pomeroy*, 93 Utah at 470–72, 73 P.2d at 1297–98.

The second federal line of authority on the definition of a separate claim is exemplified by the approach of the Second Circuit. That approach is more liberal in that it makes a broader range of orders eligible for certification under rule 54(b). "The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." *Reiser v. Baltimore & Ohio R.R.*, 224 F.2d 198, 199 (2d Cir.1955). Under this approach, multiple claims for relief exist when the "possible recoveries are more than one in number and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civ.2d* § 2657, at 67 (citations omitted). This is the approach taken by Justice Stewart's concurrence today.

The motive for the Second Circuit's adoption of this approach was to ease the obstacles to 54(b) interlocutory appeals in response to the adoption of liberal joinder rules which could conceivably create an injustice for litigants who were forced to await the resolution of the entire case even though their rights on some issues had perhaps been conclusively resolved. *Collins v. Metro–Goldwyn Pictures Corp.*, 106 F.2d 83, 85 (2d Cir.1939). This concern reflects the consensus of the federal rule makers of 1938. Prior to the adoption of the Federal Rules of Civil Procedure, at a time when litigation was generally conducted by two parties and was limited to one claim, courts generally required a final determination on all claims prior to appeal. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956). However, with the adoption of liberal joinder rules in 1938, there was concern that in some instances there might be a need to allow interlocutory appeals prior to a final determination of the case. *See* Advisory Committee on Rules for Civil

---

**3.** Several states also follow this approach. *See, e.g., Cole v. Peterson Realty, Inc.*, 432 A.2d 752, 755 (Me.1981); *Las Vegas Hacienda v. G.L.M.M. Corp.*, 93 Nev. 177, 561 P.2d 1334, 1335 (1977); *Ochs v. Northwestern Nat'l Life Ins. Co.*, 254 N.W.2d 163, 167 (S.D.1977).

Procedure, Report of Proposed Amendments, *reprinted in* 5 F.R.D. 437, 472 (1946). Since at that time there was no federal analogue to our rule of appellate procedure 5 permitting appeals from any interlocutory order under control of the appellate courts, the federal rule makers proposed rule 54(b), which vested control in the trial courts.

In 1958, Congress adopted 28 U.S.C. section 1292, which takes the approach of our appellate rule 5(b) and permits interlocutory appeals under control of the appellate courts, but only in a rather narrow set of circumstances where a trial judge has also agreed that the issues warrant appellate review. *See* Advisory Committee Notes to 1963 amendments. This provision is not nearly as broad as our rule 5(b), which permits an appellate court to authorize the taking of an appeal from any order of a trial court without the trial court's approval.[4]

In light of the different situations that obtain in the Utah courts and the federal courts regarding the opportunities for review of interlocutory orders, we find the reasons advanced by the Second Circuit for giving federal rule 54(b) a broad reading inapposite when construing the Utah rule. Despite the fact that we copied federal rule 54(b), our need for it was never as great as the federal courts', and certainly has been less since the 1950 adoption of civil rule 72, the predecessor to appellate rule 5.

Moreover, while a narrow approach to 54(b) certifications does not limit the availability of interlocutory appeals in Utah, it does have the advantage of giving the appellate courts greater control over their dockets. Our experience suggests that district courts rather freely grant certifications, often without examining closely the certifiability of the underlying order. *See, e.g., Olson v. Salt Lake City School Dist.,* 724 P.2d 960 (Utah 1986). A 54(b) certification has relatively little consequence for the trial court, but it does force the appellate court to review a district court order whether or not the appellate court thinks there was error and without regard to the delays that may result from a piecemeal appeal. If fewer orders are certifiable under 54(b), those seeking to appeal from interlocutory orders will have to convince the appellate court that there is good reason to permit the appeal under rule 5 of the Utah Rules of Appellate Procedure, an entirely wholesome result.

Based on the foregoing, we conclude that the Seventh Circuit's approach is more in line with our needs than that of the Second Circuit. Utah's rules of appellate procedure provide ample avenues for interlocutory appeals.

We recognize that the "factual overlap" approach of the Seventh Circuit is dependent on the facts of each case and that the operation of this standard will have to be fleshed out over time. One important factor that is followed by the Seventh Circuit and others in determining whether the operative facts underlying the order that is claimed eligible for 54(b) certification is the res judicata effect that determination would have on the issues remaining before the trial court. *See Dominik,* 852 F.2d at 1037; *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir.1981).[5] Where the facts

---

**4.** 28 U.S.C. section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge of the Court of Appeals or a judge thereof shall so order.
28 U.S.C. § 1292(b) (Supp.1991).

**5.** This res judicata approach is followed by other courts as well. *See Tolson v. United States,* 732 F.2d 998, 1001 (D.C.Cir.1984); *Gold Seal Co. v. Weeks,* 209 F.2d 802, 809–10 (D.C.Cir.1954); *Page v. Preisser,* 585 F.2d 336, 339 (8th Cir.1978) ("[R]ule [54(b) ] did not ... purport to amend

are sufficiently similar to constitute res judicata on the remaining issues, 54(b) certification is generally precluded. Although this factor may not always be determinative, *Minority Police Officers*, 721 F.2d at 200, it is an important consideration.

■ Turning to the facts of the present case, we conclude that the trial court erred in determining that its order was a final order eligible for certification. Under the analytical approach we adopt today, the key question is whether there is factual overlap between the ostensibly separate claims. Here, the overlap is total. The taxpayers' claims are all based on the same underlying facts. Their other constitutional arguments are really only different theories of constitutional invalidity. It would be a waste of judicial resources to have this court learn the facts of the case in order to determine the propriety of the trial court's decision under article XIII, section 5 of the Utah Constitution, when at a later time we would be forced to review a variant challenge to the same statute on the same facts.[6]

Because the issue certified to this court is based on facts that substantially overlap those facts that serve as the basis for other theories pending before the district court, this appeal is dismissed as erroneously certified under rule 54(b).

HALL, C.J., and DURHAM, J., concur.

HOWE, Associate C.J., concurs in the result.

STEWART, Justice (concurring in the result).

The majority opinion simply ignores the intended construction of the language of Rule 54(b) of the Utah Rules of Civil Procedure and does not provide this Court with greater control over its calendar. Although the majority states that "the Seventh Circuit's approach is more in line with our needs than that of the Second Circuit,"

that approach is inconsistent with the language of Rule 54(b), ignores one of the primary purposes of the rule, and has been followed by few, if any, courts. Indeed, the D.C. Circuit has rejected the "different facts" test for the very reason that the Seventh Circuit adopted it, stating: "If the relevant criteria for defining a 'separate' claim within the meaning of Rule 54(b) are, as the district court indicated, the necessity for proof of some different facts, and the application of distinguishable law, a host of pre-trial substantive rulings would be swept within the Rule's domain." *Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir.1984) (footnotes omitted).

Furthermore, the Seventh Circuit has had a difficult time applying its factual distinctness test, as evidenced by recent opinions. *See, e.g., Buckley v. Fitzsimmons*, 919 F.2d 1230, 1236–38 (7th Cir. 1990); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1366–68 (7th Cir.1990). In *Olympia Hotels*, the court stated: "[W]e think that some of our previous cases place too much weight on the existence and extent of factual overlap between the two claims." 908 F.2d at 1367. The court also stated that "considerable" factual overlap would no longer be a "decisive consideration" in denying Rule 54(b) appeals. The court held: "If the claims are legally distinct and involve at least some separate facts, the district court has the *power* to enter a Rule 54(b) judgment, and it becomes a matter of the district judge's *discretion....*" 908 F.2d at 1368 (emphasis in original).

I submit that the Second Circuit's interpretation of Rule 54(b), which I would adopt, is consistent with our needs and also has the advantage of providing a clearer standard for trial judges, attorneys, and this Court, as well as being a correct construction that is in harmony with the history of the rule. *See, e.g., Acha v. Beame*, 570 F.2d 57, 62 (2d Cir.1978); *Rieser v. Baltimore & Ohio R.R.*, 224 F.2d 198, 199

---

or dilute the fundamental rule against splitting a cause of action.").

6. Even under the liberal approach cited in the concurrence, the judge's order was not final

because under any theory the taxpayers espoused, they sought the same remedy: a declaration that the statute was unconstitutional and reimbursement for taxes paid under protest.

(2d Cir.1955), *cert. denied*, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956).

The Seventh Circuit's interpretation of Rule 54(b), adopted by the majority, is clearly inconsistent with the rule's history. *See, e.g., National Metalcrafters v. McNeil*, 784 F.2d 817 (7th Cir.1986); *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698 (7th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). The Utah rule is substantially the same as the federal rule and the history of that rule has some relevance to the intent of the language of our Rule 54(b). Of course this Court is not bound by any federal precedent, but we consistently look to authorities which have interpreted a federal rule as guidance for our construction of a state counterpart. Originally, the federal rule contained the words "transaction or occurrence" in the definition of claim for relief, making that definition much like the "different facts" definition adopted by the majority opinion. The words "transaction or occurrence" were deleted in the 1948 amendment of the rule. *See* 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2657 (2d ed. 1983).

Following that amendment, the United States Supreme Court specifically rejected the "same transaction or occurrence" test. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). In fact, the Court indicated that although the claim for relief at issue in that case had been appropriately certified, the claim may not have been appealable under the former rule, thus providing "an excellent illustration of the value of the amended rule which was designed to overcome that difficulty." 351 U.S. at 437, 76 S.Ct. at 900. The Court held the claims to be separate even though one of the claims "rest[ed] in part on some

of the facts ... involved in" the others. 351 U.S. at 437 n. 9, 76 S.Ct. at 900 n. 9.

In a related case decided at the same time, the Court wrote that "the test of appealability under the original rule was whether the adjudicated claims were separate from, and independent of, the unadjudicated claims. However, as set forth in [*Sears*], that test led to uncertainty, of which the present case might have been an example. The amended rule overcomes that difficulty...." *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956) (footnotes and citations omitted). The Court also stated that the "amended rule meets the needs and problems of modern judicial administration by adjusting the unit for appeal to fit multiple claims actions, while retaining a right of judicial review over the discretion exercised by the District Court in determining when there is no just reason for delay." 351 U.S. at 453. These two Supreme Court cases indicate that a "different facts" test was amended out of Rule 54(b) and that the amended rule was specifically designed to overcome the difficulties caused by that test, the test this Court now adopts.[1] *Cold Metal Process Co.* also makes clear that appellate courts retain jurisdiction to dismiss improperly certified judgments. The Second Circuit test, which I submit is the proper construction, is "consistent with both Supreme Court decisions." 10 *Federal Practice and Procedure* § 2657.

The majority also confuses the first and second requirements found in *Pate v. Marathon Steel Co.*, 692 P.2d 765, 767 (Utah 1984). The "different facts" test relates to the first requirement mentioned in *Pate*—that of multiple claims for relief—and not the second requirement—the finality of the judgment—as the majority mis-

---

**1.** This point is made even more clear by the language of amended Rule 54(b). "The amended rule, in contrast to the rule in its original form, treats counterclaims, whether compulsory or permissive, like other multiple claims." *Cold Metal Process*, 351 U.S. at 452, 76 S.Ct. at 908. Thus, using factual distinctness as the test for appeals under Utah Rule 54(b), which also does not distinguish between compulsory and permissive counterclaims, is directly inconsistent

with the rule. Basically, the Seventh Circuit approach would prohibit Rule 54(b) appeals of compulsory counterclaims, a prohibition which is clearly inappropriate under the language of either the federal or Utah rule. For an example of the Seventh Circuit's struggle to deal with this inherent inconsistency in its construction of Rule 54(b), see *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1366–68 (7th Cir.1990).

takenly believes. The three *Pate* requirements are taken from 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2656 (1983). The majority relies on language from *Federal Practice and Procedure* § 2657 in its analysis of the second requirement which actually pertains to the first.

In addition to ignoring the history of Rule 54(b), I believe that the majority errs for two other reasons in adopting a "different facts" test. First, the majority approach undermines the discretionary aspect of Rule 54(b) appeals. Second, the majority relies entirely on its stated concern for calendar management.[2] Those concerns are better met by reviewing Rule 54(b) certifications for abuse of discretion under a "no just reason for delay" standard.

In some instances, appeal to this Court is appropriate although other claims remain unresolved in the trial court. "The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." 10 *Federal Practice and Procedure* § 2654, at 35. This is a decision which should be made in the discretion of the trial judge, who is familiar with the parties, the facts, and the claims and is therefore in the best position to make this determination. Allowing the trial judge, who is most familiar with a case, the discretion to certify certain claims for appeal serves a valuable purpose which cannot be accomplished by the granting of interlocutory appeals.

There are two aspects to the role of an appellate court in Rule 54(b) cases. The court must first scrutinize the trial court's determination on factors such as the interrelationship of the claims so as to ensure that juridical concerns are met. Second, the court reviews the discretionary judgment of the trial court, which "should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980) (quoting *Sears*, 351 U.S. at 437, 76 S.Ct. at 900). The test adopted by the majority is not consistent with this two-step review process. By making factual separability the sole criterion for a Rule 54(b) appeal, the Seventh Circuit approach undermines the discretion given to the trial court. The Seventh Circuit's approach is flawed because its "definition of a claim is so broad that it engulfs the discretionary aspects of the rule...." Note, *Multiple Claims Under Rule 54(b): A Time for Reexamination?*, 1985 B.Y.U. L.Rev. 327, 327–28. By interfering with the trial court's discretion, the majority substantially diminishes the effectiveness of Rule 54(b).[3]

---

**2.** The Court ought to look to the language and purpose of Rule 54(b) for the appropriate guidance in construing that rule. If, as a matter of policy, the Court dislikes Rule 54(b), perhaps the rule should be abolished. Attorneys and trial judges will certainly not be able to construe the rules of procedure if the language and history of the rules are thought to be secondary in importance to some ad hoc consideration of a majority of this Court.

**3.** The majority argues that there are differences between the power of Utah and federal appellate courts to consider interlocutory appeals which make the Seventh Circuit approach more appropriate for Utah appellate courts. Specifically, it argues that because interlocutory orders in federal courts are only appealable in limited circumstances, and Utah appellate courts have the power to review any interlocutory order, federal appellate courts may have policy reasons for expanding Rule 54(b) appeals which do not exist in Utah courts.

However, it is not necessarily true that the federal courts are motivated by policy concerns different from those which motivate us. Although Utah appellate courts may have broader discretionary judgment to hear interlocutory orders than do federal appellate courts, the federal courts are subject to appeals of right which would only be discretionary for Utah courts. For example, 28 U.S.C. § 1292(a) (1988) provides for such appeals in cases involving injunctions. Even if Utah courts hear more interlocutory appeals through an exercise of discretion, the federal courts hear more interlocutory appeals as appeals of right. Furthermore, in federal courts "the availability of review, short of complete disposition of an action, [is becoming] more and more within the discretion of the courts of appeals." 6 J. Moore, *Moore's Federal Practice* ¶ 54.43, at 54–291 (2d ed. 1990). In spite of this increased discretion, the majority of federal courts do not attempt to limit Rule 54(b) appeals as does the Seventh Circuit.

Furthermore, regardless of which approach is followed, this Court retains control of Rule 54(b) appeals and may decline to hear such appeals if the trial court has abused its discretion in finding that there is no just reason for delay. The trial court's "discretion is to be exercised 'in the interest of sound judicial administration.' Thus, in deciding whether there are no just reasons to delay ... a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss–Wright Corp.*, 446 U.S. at 8, 100 S.Ct. at 1465 (citations omitted). Some of the factors to be used in this determination are "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." 446 U.S. at 8, 100 S.Ct. at 1465.

One difficulty with the majority's interpretation of Rule 54(b) is that there will be appeals which should be allowed under Rule 54(b) but which will not qualify under the "different facts" standard. The majority bars all such appeals for the sake of judicial economy because it believes that "[i]t would be a waste of judicial resources" for this Court to learn the facts of a case twice. However, if an appeal would waste judicial resources, the trial court ought not certify it because there is a just reason for delay. If the trial court does certify, this Court may decline to hear the appeal on the ground that the trial court abused its discretion in certifying the judgment. This approach serves the needs of this Court, the litigants, and the trial courts.

In sum, I would adopt the approach of the Second Circuit rather than that of the Seventh. The Second Circuit test is the approach that was intended by the language of the 1948 amendment, which this Court adopted when it first promulgated the Utah Rules of Civil Procedure. The Second Circuit approach does not interfere with the desirable discretion of the trial court, gives this Court ample control over Rule 54(b) appeals, and has the advantage

of providing a clearer and better defined standard for judges and attorneys. The result of the majority's artificial standard is that some appeals that could appropriately be taken under Rule 54(b) will be denied despite the interests of justice, litigants, and judicial administration.