A.J. MACKAY COMPANY, Plaintiff and Appellant,

v.

OKLAND CONSTRUCTION COMPANY, INC., Defendant and Appellee.

No. 890172.

Supreme Court of Utah.

Aug. 16, 1991.

---

7. *See Espinal v. Salt Lake City Bd. of Educ.,* 797 P.2d 412, 413 (Utah 1990).

8. Utah R.Civ.P. 56(c).

Kenneth A. Okazaki, Barbara K. Berrett, Salt Lake City, for plaintiff and appellant.

Wilford A. Beesley, Stanford P. Fitts, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Appellant A.J. Mackay Company ("Mackay") appeals from the trial court's order denying its motion for summary judgment and granting summary judgment to appellee Okland Construction Company ("Okland"). Mackay, a subcontractor and the plaintiff below, sought a summary judgment to enforce an arbitration clause in an agreement between itself and Okland, the general contractor. Okland filed a cross-motion for summary judgment and a counterclaim. In support of its summary judgment motion, Okland asserted that Mackay could not bring and maintain an action on the contract because Mackay was not a licensed contractor as required by Utah law. The trial court granted Okland's motion for summary judgment, finding that Mackay's unlicensed contractor status precluded recovery under section 58A–1a–13 of the Code. Utah Code Ann. § 58A–1a–13 (1981) (current version at Utah Code Ann. § 58–55–17 (1990)). On appeal, Mackay challenges this ruling. We dismiss the appeal without reaching the merits.

In 1959, A.J. Mackay & Sons was formed as a partnership to do construction work. The partnership was properly licensed as a contractor at that time. Some twenty years later, on February 1, 1979, the A.J. Mackay Company was incorporated. Apparently, it was the old partnership doing business under a new form with a slightly altered name. Mackay asserts that the corporation succeeded the partnership and that, through inadvertence, it failed to have the contractor's license under which the partnership did business reissued in the name of the new corporation. Mackay further asserts that it did not discover the error until 1985 during routine renewal of the license. At that time, the oversight was corrected and the corporation was finally licensed as a contractor.

Prior to the Mackay corporation obtaining its own contractor's license, Okland entered into an agreement with the Utah Department of Transportation to work on construction of public highway I-215 from west of Little Cottonwood Creek to west of 13th East Street in Salt Lake County. In February of 1984, Okland, the general contractor, entered into several agreements with Mackay as a subcontractor to perform work on portions of the project. Mackay's work on the contract was completed in November of 1984. Mackay contends that as part of its performance, it was required to do extra work for which it was entitled to, but did not receive, compensation.

In December of 1988, Mackay filed a complaint against Okland seeking enforcement of an arbitration clause in its contract to determine the amounts due. Okland filed a counterclaim asserting that Mackay had failed to timely complete its work on the project and, as a result, the state had assessed a $48,600 penalty against Okland. Okland claimed that under the contract, Mackay was liable for this penalty. Okland also moved for summary judgment against Mackay, claiming that the complaint seeking to enforce the arbitration clause should be dismissed because Mackay was barred from enforcing the contract or recovering under it because it was not a licensed contractor at the time of the construction. Mackay responded by moving for summary judgment, arguing that the arbitration clause was in force. Mackay also moved to dismiss the counterclaim.

The trial court granted Okland's motion for summary judgment as to Mackay's complaint, ruling that "because plaintiff did not have a valid contractor's license it is precluded by statute from maintaining this action." The court thus avoided reaching the merits of Mackay's claim seeking arbitration of the parties' disputes. The court

also denied Mackay's motion to dismiss the counterclaim.

■ Mackay filed a notice of appeal from the trial court's grant of summary judgment. The appeal was presented to this court as an appeal of right taken from a "final order" under Utah Rule of Appellate Procedure 3. *See* Utah R.App.P. 3. The issue of Mackay's entitlement to enforce the provisions of the contract was briefed, argued, and taken under submission, all without any party or the court taking notice of the fact that the order appealed from was *not* a final order from which Mackay was entitled to take an appeal as a matter of right. The order was not final for the simple reason that the counterclaim remains pending before the trial court. *Kennedy v. New Era Indus.*, 600 P.2d 534, 536 (Utah 1979).

■ As we have noted before, acquiescence of the parties is insufficient to confer jurisdiction on the court, and a lack of jurisdiction can be raised by the court or either party at any time. *E.g.*, *Olson v. Salt Lake City School Dist.*, 724 P.2d 960, 964 (Utah 1986).

The final judgment rule, which underlies what is now Utah Rule of Appellate Procedure 3, precludes a party from taking an appeal from any orders or judgments that are not final. However, there are exceptions to the final judgment rule when the order in question is eligible for certification under Utah Rule of Civil Procedure 54(b) and has been properly certified or when we have given permission in advance to the parties to take an appeal from an interlocutory order under Utah Rule of Appellate Procedure 5. *See, e.g., Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1104 (1991); *Olson*, 724 P.2d at 963–65; *Williams v. State*, 716 P.2d 806, 807 (Utah 1986); *Pate v. Marathon Steel Co.*, 692 P.2d 765, 768 (Utah 1984). Here, because the order appealed from was not final and was not certified nor eligible for certification under rule 54(b), it was not properly taken.

■ In a situation such as this, the remedy is dismissal of the appeal. *See, e.g.,* *First Security Bank v. Conlin,* —— P.2d ——, —— 164 Utah Adv.Rep. 27, 27 (1991); *Kennecott Corp.*, 814 P.2d at 1105; *Crosland v. Peck*, 738 P.2d 631, 633 (Utah 1987); *Olson*, 724 P.2d at 963–65; *General Motors Acceptance Corp. v. Martinez*, 712 P.2d 243, 244 (Utah 1985); *All Weather Insulation v. Amiron Dev. Corp.*, 702 P.2d 1176, 1178 (Utah 1985); *Pate*, 692 P.2d at 768; *Kennedy*, 600 P.2d at 537; *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 540 (Utah 1979); *Backstrom Family Ltd. v. Hall*, 751 P.2d 1157, 1160 (Utah Ct.App. 1988).

Dictum in *Williams* stated, "In extraordinary cases, we may choose to treat a purported [appellate rule 3 appeal of right] as an interlocutory appeal under [appellate rule 5]." *Williams*, 716 P.2d at 808. However, in *Williams* we found no basis for taking such a step. Indeed, in none of our reported cases since *Williams* can we discover an occasion where we saved the improperly taken appeal from dismissal. This fact indicates that the course suggested in *Williams* is to be taken very sparingly. The reasons are understandable.

First, to routinely decide on the merits appeals from unappealable orders simply because their true character has evaded detection until after argument would be to encourage counsel to attempt to appeal from unappealable orders and to conceal the nature of the orders from the court in the hope that once the matter was briefed and argued, we would proceed to rule on the merits. Second, every case that we permit to improperly occupy a space on our plenary consideration calendar takes a space that would otherwise have been allocated to another and reduces our ability to control our docket.

Finally, given the fact that we have routinely dismissed appeals that were improperly taken, even after briefing and argument, we bear a heavy burden of justification when we single out one improperly taken appeal for preferential treatment that has been denied so many others. The essence of justice is to treat similar cases similarly. *See* H.L.A. Hart, *The Concept of Law* 151–53 (1961). Until we can explain

persuasively why any one case deserves treatment denied to others, we should deny extraordinary treatment.

In *Williams*, we did not describe what might constitute the "extraordinary case" that would move us to treat an appeal of right taken from an unappealable order as a permissive interlocutory appeal under rule 5. Logically, for such circumstances to exist, a minimum threshold requirement would be that the order appealed from be one we would have initially deemed worthy of appeal under rule 5. In addition, the factors discussed above suggest that we should also consider how we have treated other unappealable orders that have evaded early detection by this court.

We now turn to the present case. It appears to be a case in which we would not have granted an interlocutory appeal. The issues remaining before the trial court after the grant of summary judgment are relatively straightforward, and any decision on them would not have been particularly time consuming. This argues strongly against permitting an interlocutory appeal, even if we disagreed with the decision of the trial court. Moreover, one appeal after final judgment would have permitted resolution of all issues together, probably with an ultimate savings in cost and time for the parties and the courts. This is especially so when we take into account the one- or two-year delay that would have been occasioned by an interlocutory appeal and the fact that a decision on the issues presented by such an appeal would not likely have precluded the parties from later appealing to us any decision ultimately reached by the trial court on the remaining issues.

It is true that the parties have expended time and money on this appeal, and that part of the case is already before us, but that is a result of the parties' own oversight. Accordingly, we give that fact no real weight, especially in light of the fact that the unappealability of the order is patent. Situations where a trial court has improperly certified for appeal an order under rule 54(b) at least raise the suggestion that the appealing party was led astray by the trial judge. That did not occur here. Yet even in such situations, we have dismissed improperly taken appeals after argument. *See, e.g., Kennecott Corp.*, 814 P.2d at 1105; *Olson*, 724 P.2d at 965; *Williams*, 716 P.2d at 808; *Martinez*, 712 P.2d at 244; *All Weather Insulation*, 702 P.2d at 1177; *Pate*, 692 P.2d at 768–69; *Kennedy*, 600 P.2d at 535; *Salt Lake City Corp.*, 600 P.2d at 540; *J.B. & R.E. Walker v. Thayn*, 17 Utah 2d 120, 121, 405 P.2d 342, 343 (1965). There is no reason to spare the parties here that fate. As Justice Stewart, writing for the court, stated in *Kennedy:* "The lost time and effort occasioned by the briefing and oral argument in this case is a small price to pay for insisting that the parties comply with the rules of procedure so that the proper relationship between this Court and the trial courts may be maintained." *Kennedy*, 600 P.2d at 537.

The appeal is dismissed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.